UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE INGRATTA,

    Plaintiff,

v.

TWO UNKNOWN NAMED AGENTS
OF THE UNITED STATES
CUSTOMS AND BORDER
PROTECTION, jointly and severally,

    Defendants.

Case No.

Hon.

S. Thomas Wienner (P29233)
Wienner & Gould, P.C.
Attorneys for Plaintiff
950 West University Dr., Ste. 350
Rochester, MI  48304
(248) 841-9400; Fax (248) 652-2729

## COMPLAINT AND JURY DEMAND

Plaintiff Leslie Ingratta ("Plaintiff"), by her counsel, Wienner & Gould, P.C., hereby complains against the above-captioned defendants and for her cause of action alleges the following:

## PARTIES AND JURISDICTION

1. Plaintiff is a Canadian citizen residing at 1026 Mercer Street, Windsor, Ontario N9A1N9.

2. Plaintiff regularly travels to southeastern Michigan to shop and buy gasoline, giving her significant voluntary contacts with the United States.

3. Upon information and belief, the two unknown named Defendants (individually, "Doe" and "Roe") (jointly, "Defendants") were at all material times employed as United States

Customs and Border Protection ("CBP") officers, and stationed in the CBP office located at 150 E. Jefferson, City of Detroit, County of Wayne, State of Michigan 48226.

4. The identity of Doe is presently unknown but identifiable and within the possession of the CBP.

5. The identity of Roe is presently unknown but identifiable and within the possession of the CBP.

6. Plaintiff will seek leave to amend her complaint once she has been able to learn the actual names of Defendants through discovery.

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331.

8. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## FACTUAL ALLEGATIONS

9. Plaintiff regularly travels from Canada to the Detroit area to shop, purchase gasoline, and visit friends.

10. On January 30, 2011, Plaintiff left her home in Windsor and drove to the Detroit-Windsor Tunnel, intending to go shopping at a plaza on Woodward Avenue.

11. Plaintiff reached the CBP post at approximately 5:30 p.m.

12. A CBP officer briefly questioned Plaintiff at the border post and then directed her to pull over and enter the CBP building.

13. Plaintiff was repeatedly questioned about her destination, plans in the United States, relationships with United States citizens, and work schedule.

14. Plaintiff answered the officer's questions, but he summarily informed Plaintiff that he could tell she was lying. The officer told her that "you can't even look me in the eye when answering me, which proves you're lying." Plaintiff was ordered to sit down and wait.

15. Sometime later, Defendants approached Plaintiff and ordered her to come with them to a holding cell. Defendants instructed Plaintiff to remove her coat, and proceeded to search her coat and purse.

16. Plaintiff asked Defendants why she was being "treated like a criminal." Defendants responded, "there is obviously something or they wouldn't have asked us to search you."

17. Defendants further informed Plaintiff that they would strip-search her if they felt it was necessary.

18. Defendants ordered Plaintiff to stand facing the cell wall with her arms and legs spread. Roe began her search, while Doe stared Plaintiff in the face and repeatedly ordered her not to look down.

19. Roe put her hands underneath Plaintiff's bra and began shaking and jiggling Plaintiff's bare breasts.

20. Roe then grabbed Plaintiff's right buttock, roughly pulled it aside, and rubbed Plaintiff's clitoris.

21. Roe repeated these actions with the left buttock.

22. Defendants then told Plaintiff to "fix herself up" and sit down, after which Defendants searched Plaintiff's boots. Defendants then escorted Plaintiff out of the cell and back to the waiting room. While Plaintiff was waiting, Doe called her up to the desk and asked her whether she was on a "booty call."

23. In the waiting room, other CBP officers repeatedly accused Plaintiff of lying about her destination and plans. Two other CBP officers – one man and one woman – escorted Plaintiff back into the same cell and interrogated her again about the same subjects.

24. At this point, Plaintiff was crying and shaking.

25. These CBP officers then escorted Plaintiff back to the waiting area, where they returned her passport and informed her that she was clear to enter the United States.

26. By this point, Plaintiff was too traumatized to continue on her trip and returned to Canada.

27. When Plaintiff returned home, she discovered that her tampon had been pulled out during the search and that blood had leaked onto her underwear.

28. As a direct result of Defendants' actions, Plaintiff has suffered a violation of her rights under the Fourth Amendment and sustained mental anguish as well as emotional pain and suffering.

29. Upon information and belief, Defendants were both acting in their capacities as officers of the CBP during all relevant and material times.

## LEGAL CLAIMS

### Count I
### Violation of Fourth Amendment Rights

30. Plaintiff incorporates herein paragraphs 1 through 29 of the Complaint.

31. Plaintiff has significant voluntary connections with the United States which entitle her to the protections of the Fourth Amendment to the United States Constitution against unreasonable searches and seizures.

32. During Defendants' search, Doe and Roe subjected Plaintiff to an invasive personal search during the course of which Roe fondled Plaintiff's breasts and buttocks, stroked Plaintiff's clitoris, and pulled on Plaintiff's tampon.

33. The search was carried out in a windowless concrete holding cell which Doe and Roe did not permit Plaintiff to leave until they had completed their invasive search.

34. Upon information and belief, this search was carried out contrary to standard CBP procedure and without any reasonable suspicion that the type of search performed was warranted.

35. This unauthorized, unreasonable, unduly threatening and physically invasive search violated Plaintiff's Fourth Amendment rights against unreasonable search and seizure.

36. As a direct result of this violation of her Fourth Amendment rights, Plaintiff has suffered mental anguish and emotional distress.

37. Due to the outrageousness of Defendants' violation of Plaintiff's constitutional rights, Defendants are jointly liable to Plaintiff for punitive damages as well as compensatory damages for her mental anguish and emotional distress in amounts to be determined at trial.

## **CLAIMS FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

I. Enter its judgment in favor of Plaintiff and against each of the Defendants, jointly and severally, for compensatory and punitive damages in whatever amounts are found appropriate at trial;

II. Award Plaintiff her costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees; and

III. Grant Plaintiff such other and further relief as the Court may deem just and proper.

        /s/ S. Thomas Wienner (P29233)
        Wienner & Gould, P.C.
        Attorneys for Plaintiff
        950 W. University Dr., Ste. 350
        Rochester, MI  48307
        (248) 841-9400; Fax 652-2729
        Primary E-Mail:  twienner@wiennergould.com

Dated: March 13, 2012

## JURY DEMAND

Plaintiff hereby demands a trial by jury of the above-captioned case.

        /s/ S. Thomas Wienner (P29233)
        Wienner & Gould, P.C.
        Attorneys for Plaintiff
        950 W. University Dr., Ste. 350
        Rochester, MI  48307
        (248) 841-9400; Fax 652-2729
        Primary E-Mail:  twienner@wiennergould.com

Dated: March 13, 2012