UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE INGRATTA,

              Plaintiff,                             Case No. 12-cv-11104

                                              Paul D. Borman
v.                                        United States District Judge

TIFFANY EASLEY and ROSIE
MACKENZIE, agents of the United
States Customs and Border Protection,
in their individual capacities, and the
UNITED STATES OF AMERICA,
jointly and severally,

              Defendants.

_____/

ORDER GRANTING PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE
DEFENDANTS' PROPOSED EXHIBIT 514 (ECF NO. 26)

      Before the Court is Plaintiff's Motion *In Limine* to Exclude Defendants' Proposed Exhibit 514. (ECF No. 26.) Defendants filed a Response. (ECF No. 27.) The Court has reviewed the submissions and concluded that oral argument would not assist the Court in resolving the motion. E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court GRANTS the motion.

**I.      INTRODUCTION**

      Plaintiff in this case, a Canadian citizen, alleges that she was subject to an unreasonable search of her person by United States Customs and Border Protection (CBP) agents Tiffany Easley and Rosie Mackenzie, as she attempted to cross the border from Windsor to Detroit on January 30, 2011, to shop at a plaza on Woodward Avenue. The motion before the Court involves the Defendants' efforts to introduce into evidence the verdict form and judgment in an unrelated border

1

search case, *Van Beek v. Robinson, et al.*, No. 11-cv-10514 (E.D. Mich. 2011), where similar allegations were made against different CBP agents. The *Van Beek* case was tried before Judge Zatkoff of this District and resulted in a jury verdict for the defendant CBP agents.  The Defendants argue that the *Van Beek* case is relevant to this case because Ms. Ingratta testified at her deposition that she only decided to file this suit after reading in the newspaper about the similar claims made in *Van Beek*.  Defendants argue that this goes to demonstrate Plaintiff's motive in filing suit "as well as her credibility."  The Defendants further argue that the verdict form and judgment in favor of the CBP officers in *Van Beek* must be introduced in this case to prevent the prejudicial inference that other CBP officers have been found guilty of engaging in similar conduct.

## II.    LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions in limine-in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).  District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991).

## III.    ANALYSIS

Plaintiff has stated that she has no intention of introducing any evidence regarding the *Van Beek* case at trial in this matter and that such evidence has no relevance to any issue in this case. Despite the fact that Plaintiff has no intention of introducing evidence of the allegations made in the *Van Beek* case, Defendant argues that evidence of the existence of the *Van Beek* case is relevant to prove Plaintiff's "state of mind" in bringing this case and her "credibility."  (ECF No. 27, Resp. 5.)

2

Plaintiff testified at her deposition that she was shaking and crying after the search, but admitted that at that point the she thought the search was "a border control thing."  (ECF No. 27, Resp. Ex. 1, April 10, 2013 Deposition of Leslie Ingratta 61.)  Although the experience left her "hysterical" and "sobbing," she just "wanted to go home afterward."  She testified that it wasn't until the next day at work, when co-workers told her that the search sounded like an assault and she should sue, that legal action against the CBP crossed her mind. *Id.* at 61-62.  She dismissed the notion, figuring "that is the border, like come on now, like who is going to win that fight, right." *Id.* at 62.  So at that point she "didn't do anything."  *Id.*   It wasn't until two weeks later when a co-worker drew her attention to an article in the newspaper about similar allegations having been made in the *Van Beek* case, that Plaintiff realized she was "not alone in this big, huge fight," and decided to contact her current counsel, Mr. Wienner, who also represented the plaintiff *Van Beek*.  *Id.*

The probative value of this evidence for the reason proffered by the Defendants, *i.e.* to demonstrate that Plaintiff either lacks credibility or filed suit for an improper motive, is questionable.  Fairly interpreted, Plaintiff's deposition testimony reveals that she felt emboldened to "take on" the Border Patrol after reading that another similarly situated young woman had a similar experience and had filed an action against the offending CBP agents.  This testimony does not reasonably suggest an "improper" motive or a lack of credibility.  What the Defendants really want to get before the jury in this case is the *outcome* of the *Van Beek* case, a favorable verdict for the CBP agents, which would tend to suggest that a similar conclusion should be reached as to the conduct of the CBP agents in this case - definitely suggesting a decision on an improper basis and creating unfair prejudice under Rule 403.  Certainly if the verdict in *Van Beek* had been for the plaintiff, the Defendants would not be trying to introduce evidence of that case, and the unfavorable

judgment, to support a suggestion that Plaintiff was improperly motivated to file this action.

More importantly, however, the legal basis for admitting the verdict form and judgment is unclear. The Defendants preface their response with the heading "The Judgment in *Van Beek* Is Relevant." (Resp. 5.) The Defendants then state that "[c]ourts have found that evidence of prior cases, including prior judgments, may be relevant if it demonstrates a party's state of mind." (ECF No. 27, Resp. 5.) But nothing about the *judgment* in *Van Beek* speaks to Plaintiff's state of mind - it is Plaintiff's *learning* of the *Van Beek* case, which at that time had not gone to judgment, that the Defendants suggest bears negatively on her credibility in this case. In making this argument, the Defendants rely on two cases, neither from this district or circuit, where the courts admitted evidence of a *party's* prior litigation conduct for a non-propensity purpose under Federal Rule of Evidence 404(b). In *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 705 F. Supp. 2d 1265 (D.N.M. 2010), a Sherman Act antitrust case, the court denied defendants' motion to exclude evidence of defendants' prior course of conduct in suing for patent infringement only to settle by entering into a supply agreement similar to agreement at issue in the case. *Id.* at 1271. The court admitted the evidence under Fed. R. Evid. 404(b), concluding that "[a] prior course of similar conduct, if believed by the jury, makes it more likely that the Defendants' acts in this case were willful and not merely coincidental or reactionary." *Id*. The prior course of conduct tended to establish willfulness and was therefore offered for the non-propensity purpose of intent and was relevant. Similarly, in *Lyman v. St. Jude Medical S.C., Inc.*, 580 F. Supp. 2d 719 (E.D. Wis. 2008), St. Jude was the target of a separate class action lawsuit alleging that it had engaged in impermissible bulk sales to boost its financial reportings. *Id.* at 731. In the *Lyman* action, one of St. Jude's proffered justifications for terminating Lyman was his conduct with respect to certain bulk sales. Therefore, the court

4

concluded, the bulk sales class action allegations against St. Jude in the other lawsuit were relevant to whether Lyman was terminated for cause. *Id.*

Here, the Defendants apparently intend to solicit testimony from Ms. Ingratta that she read an article in the newspaper about an unrelated border search case that prompted her to file this action and to suggest the inference from that testimony that Ms. Ingratta filed this action for an improper purpose and that her claims lack credibility. The exhibits that the Defendants seek to introduce in this case, *i.e.* the verdict and judgment in the wholly unrelated *Van Beek* case, become relevant, Defendants argue, to offset any prejudicial effect of the "credibility" evidence that the Defendants, not the Plaintiff, intend to solicit in this case. Reliance on the 404(b) cases under these circumstances is mystifying. Even if somehow proffered as 404(b) evidence, as Judge Zatkoff noted in *Van Beek*, "impeaching a witness's credibility is not one of the listed purposes in 404(b) for which 'other acts' evidence may be admitted." In this case, Ms. Ingratta read an article about litigation to which she was not a party, and which did not involve the conduct of the CBP agents whose conduct is at issue in this case. These 404(b) cases do not seem pertinent to the Defendants' argument for admitting the verdict and judgment in the unrelated *Van Beek* case.

In any event, the Defendants strain to create a credibility issue from Ms. Ingratta's testimony regarding her initial reaction to the border search. The Defendants urge that this testimony demonstrates that Ms. Ingratta "admitted" that she "did not believe she was improperly searched during or immediately after" the search. (Resp. 5.) Ms. Ingratta's testimony reveals that she was "hysterical" and "sobbing" after the search, that she "just wanted to go home," and that she felt powerless to contest the authority of the CBP agents who searched her. This is a far cry from admitting that she saw nothing at all wrong with the way she was treated at the border and only

concluded she may have been violated when she read a newspaper article about another woman who claimed to have been assaulted by CBP agents - which is the inference that the Defendants seek to suggest from Ms. Ingratta's testimony. Given the questionable probative value of this evidence, and its potential for significant prejudice, the Court will preclude the Defendants from introducing the verdict form and judgment in the *Van Beek* case. Fed. R. Evid. 403. Additionally, the Defendants will be precluded from suggesting, either in argument or through other testimony or evidence, that the *Van Beek* case resulted in a favorable verdict for the CBP agents. Defendants will not be permitted to orchestrate the introduction of the favorable defense verdict in *Van Beek*, which in and of itself has no tendency to make any fact of consequence to this action more or less probable than it would be without evidence of that verdict. *See* Fed. R. Evid. 401.

## IV.   CONCLUSION

The probative value of the verdict and judgment in the *Van Beek* case is of questionable relevance in this case. Moreover, the prejudicial effect of such evidence, suggesting to the jury that it decide the case on an improper basis, far outweighs any probative value. Accordingly, the Court GRANTS the Plaintiff's motion to exclude the verdict form and judgment in the *Van Beek* case and further precludes the Defendants from soliciting testimony or introducing at the trial in this case any evidence of the favorable defense verdict in *Van Beek*.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 4, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 4, 2014.

s/Deborah Tofil
Case Manager